# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KIMBORUGHLY ANN FOSTER**                              **CIVIL ACTION**

**VERSUS**

                                                                    **NO. 20-359-SDD-SDJ**

**JAYDEN HOSPITALITY, LLC, et al.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 14, 2021.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KIMBORUGHLY ANN FOSTER**                    **CIVIL ACTION**

**VERSUS**

                                             **NO. 20-359-SDD-SDJ**

**JAYDEN HOSPITALITY LLC, et al.**

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Before the Court is a Motion to Dismiss filed by Defendants Jayden Hospitality LLC, XSUM LLC, and Surat Hospitality LLC ("Defendants") (R. Doc. 21). Plaintiff opposes Defendants' Motion to Dismiss (R. Doc. 22). Defendants have filed a Reply to Plaintiff's Opposition (R. Doc. 27). For the reasons set forth below, it is recommended that Defendants' Motion to Dismiss (R. Doc. 21) be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On or about May 20, 2020, Plaintiff filed suit against Jayden Hospitality LLC, XSUM LLC, and Surat Hospitality LLC in state court.[1] Plaintiff later amended her claims against Defendants, filing an Amended Complaint on October 16, 2020 (R. Doc. 16). In her Amended Complaint, Plaintiff brings causes of action for employment discrimination in violation of Title VI and Title VII of the Civil Rights Act of 1964 and their state equivalents, as well as claims of age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and comparable state law.[2] Plaintiff's Amended Complaint also brings claims for retaliation and

---

[1] R. Doc. 1-4 at 3.
[2] R. Doc. 16 at 2.

harassment as well as for violations of the Louisiana Whistleblower Statute and the Americans with Disabilities Act ("ADA") and comparable state law.[3]

According to Plaintiff in the Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), she was hired on December 1, 2018, by Defendant Jayden Hospitality LLC ("Jayden Hospitality") as Corporate Director of Sales and Marketing.[4]  Jayden Hospitality, along with the other Defendants, owns and operates several hotels.[5]  Plaintiff's employment was terminated on May 8, 2019, approximately six (6) months after she was hired. In her Amended Complaint, Plaintiff claims myriad violations of the aforementioned statutes during her employment with Jayden Hospitality.

On June 13, 2019, prior to filing the instant lawsuit, Plaintiff filed a Charge of Discrimination with the EEOC, alleging discrimination based on sex, age, and race, as well as retaliation.[6]  Plaintiff filed a second Charge of Discrimination on June 19, 2019, which alleges only sex and age discrimination and retaliation.[7]  On February 19, 2020, the EEOC issued Plaintiff a "right-to-sue" letter, after which Plaintiff instigated this litigation.[8]  On June 11, 2020, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1331.[9]

In response to Plaintiff's filing of this lawsuit, Defendants filed a Rule 12(b)(6) Motion to Dismiss on June 19, 2020.[10]  Plaintiff then sought leave of Court to file an Amended Complaint.[11] On December 18, 2020, this Court granted Plaintiff leave to file her Amended Complaint and, as

---

[3] *Id.*
[4] R. Doc. 16-1 at 1.  As discussed in more detail below, it appears Plaintiff filed two Charges of Discrimination with the EEOC, both of which make similar claims.
[5] *Id.*
[6] *Id.*
[7] *Id.* at 8.
[8] *Id.* at 6.
[9] R. Doc. 1 at 1 ¶ 3.
[10] R. Doc. 4.
[11] R. Doc. 13.

a result, denied Defendants' Motion to Dismiss as moot.[12]  Prior to that ruling, on November 16, 2020, Defendants filed a second Motion to Dismiss (R. Doc. 21) in response to Plaintiff's Amended Complaint, which motion is now before this Court.  Plaintiff filed her Opposition thereto on November 24, 2020 (R. Doc. 22).[13]  Defendants then filed a Reply in support of their Motion to Dismiss, with leave of Court, on December 7, 2020 (R. Doc. 27).

## II.    DISCUSSION

### A.    Legal Standard

Defendants' Motion to Dismiss seeks dismissal of Plaintiff's claims "for failure to state a claim upon which relief can be granted."[14]  Federal Rule of Civil Procedure 12(b)(6) specifically allows for such a motion to dismiss based on a party's "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In order to survive a Rule 12(b)(6) motion, a pleading's language must, on its face, demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the

---

[12] R. Doc. 28.
[13] The Court notes that Plaintiff titled her opposition "Memorandom [sic] for Judgement for the Plaintiff."  R. Doc. 22 at 1.  However, as it opposed Defendants' Motion to Dismiss, the Court will here refer to it as Plaintiff's "Opposition."
[14] R. Doc. 21 at 1.

pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

"A liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.* Indeed, "a *pro se* litigant is not 'exempt…from compliance with the relevant rules of procedural and substantive law.' *NCO Financial Systems, Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) *quoting Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981). A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *Id.* (citing *Birl*, 660 F.2d at 593).

## B.    Analysis

In her Amended Complaint, Plaintiff lists the "[v]iolations" she brings therein, which include alleged violations of Title VI and VII of the Civil Rights Act of 1964 and their state law equivalents, the ADEA and its state law equivalent, the Louisiana whistleblower statute, and the

ADA.[15]  Each of these allegations is addressed, in turn, below, following a brief discussion regarding the operative Complaint in this case.

### 1.    Plaintiff's Operative Complaint

At the outset, the Court notes that Plaintiff's Amended Complaint now serves as the operative pleading in this case.  *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."); *McAdams v. Receivable Recovery Services, LLC*, No. 19-248, 2020 WL 1237011, at *1 (M.D. La. March 13, 2020) ("Generally, an amended complaint supersedes the original complaint and renders it of no legal effect.").  Thus, while Defendants assert that their Motion to Dismiss "is directed at all 3 of Plaintiff's Petitions/Complaints,"[16] as Plaintiff's Amended Complaint does not incorporate any previous Complaints, said Amended Complaint supersedes any prior filings and is now the only operative Complaint in this case.  As such, the Court will analyze Defendants' Motion to Dismiss only in light of Plaintiff's Amended Complaint.

### 2.    Plaintiff's Title VI Claim and Related State Law Claim

### a.    Title VI claim

In her Amended Complaint, Plaintiff alleges that Defendants violated Title VI during the period of her employment.  As mandated by Title VI:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

---

[15] R. Doc. 16 at 2.
[16] R. Doc. 21-1 at 2.  The Court, however, is only aware of two (2) Complaints filed by Plaintiff—her initial Complaint filed in state court (R. Doc. 1-4) and the Amended Complaint she filed with this Court on October 16, 2020 (R. Doc. 16).

42 U.S.C. § 2000d.  "The proper defendant in a Title VI case is an entity receiving federal financial assistance."  *Lewis v. Brown*, No. 14-435, 2015 WL 803124, at *5  (M.D. La. Feb. 25, 2015) (citing *Muthukumar v. Kiel*, 478 F. App'x. 156 (5th Cir. 2012)).  Thus, the first question is whether Defendants are recipients of federal financial assistance.  To that end, Plaintiff alleges only: "As Defendant's hotels advertise and profit from Government contracts (FEMA) agreements and business, etc."[17]  No other information or allegations regarding such financial assistance to Defendants is provided.  While this allegation fails to specify what type of federal financial assistance Defendants receive, keeping in mind Plaintiff's *pro se* status and the requirement that factual allegations be taken as true, coupled with Defendants' failure to argue otherwise in their Opposition, the Court will assume, only for purposes of analyzing this claim here, that Defendants do meet the criteria of an entity receiving federal financial assistance.

However, as set forth in 42 U.S.C. § 2000d-3:

> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

Thus, "[a] cause of action under Title VI necessitates (1) that the defendant have received federal financial assistance the primary objective of which is to provide employment (2) that was applied by the defendant to discriminatory programs or activities."  *Alexander v. Newellton Elementary School*, No. 07-1608, 2008 WL 3884339, at *4 (W.D. La. July 21, 2008) (citing *Nat'l Ass'n of Gov't Employees v. City Public Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 706, n. 9 (5th Cir. 1994)); *see also Sanders v. Univ. of Idaho*, --- F.Supp.3d ---, 2021 WL 3409668, at *16 (D. Ida. Aug. 3, 2021) (for liability to attach under Title VI, the "primary objective" of that federal assistance must be "to provide employment").  Here, Plaintiff makes no assertion, or even

---

[17] R. Doc. 16 at 2.

indication, that the primary objective of the federal financial assistance received by Defendants, allegedly from FEMA, is to provide employment. Similarly, there is no indication any such federal assistance was applied by any Defendant to discriminatory programs or activities. Further, despite the statutory language referring to actions "by any department or agency," courts have interpreted this "primary objective" requirement to apply to actions brought by private plaintiffs. *See Sanders, supra*; *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 636-37, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984); *Temengil v. Trust Territory of Pac. Islands*, 881 F.2d 647, 653 (9th Cir. 1989). On this basis alone, Plaintiff has failed to state a claim for which relief can be granted under Title VI.

Taking the analysis one step further results in the same outcome. To assert a claim under Title VI, "a party must not only allege and prove that the challenged conduct had a differential or disparate impact upon persons of different races, but also assert and prove that the governmental actor, in adopting or employing the challenged practices or undertaking the challenged action, intended to treat similarly situated person differently on the basis of race." *Castaneda v. Pickard*, 648 F.2d 989, 1000 (5th Cir. 1981). "A private right of action under Title VI requires intentional discrimination by the defendants." *Alexander*, 2008 WL 3884339, at *4 (citing *Scokin v. State of Tex.*, 723 F.2d 432, 441 (5th Cir. 1984)); *see also Alexander v. Sandoval*, 532 U.S. 275, 281, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) ("Title VI itself directly reaches only instances of intentional discrimination"); *Canutillo Indep. School Dist. v. Leija*, 101 F.3d 393, 397 (5th Cir. 1996) (recognizing that a Title VI plaintiff "must prove discriminatory intent"). A plaintiff, therefore, must allege facts that allow a court "reasonably to infer that the alleged discrimination was motivated by [her] national origin [or race]." *Rollerson v. Port Freeport*, No. 18-235, 2019 WL 4394584, at * 4 (S.D. Tex. Sept. 13, 2019) (quoting *Pathria v. Univ of Tex. Health Sci. Ctr. at San Antonio*, 531 F.App'x 454, 455 (5th Cir. 2013)). Nowhere in said Complaint does Plaintiff allege

that Defendants intentionally discriminated against her based on her race or even that any of the actions by Defendants were taken based on Plaintiff's race. Although Plaintiff does make some overarching, general allegations about minority employees not receiving their wages,[18] she does not make any allegations of intentional racial discrimination specific to her. *See id.* at *5 (finding that plaintiff's failure to disclose "where exactly he fits into [the] narrative" of alleged discriminatory practices "alone warrants dismissal of his Title VI claim"). As such, Plaintiff's Amended Complaint falls short of Title VI's requirement that a litigant plead facts supporting intentional discrimination. *See id.* at *4 ("A complaint that fails to provide specific allegations of acts that were taken with discriminatory intent does not state a claim for Title VI discrimination."). Because it does not contain any allegations of discriminatory intent based on race on the part of Defendants, Plaintiff fails to state a valid claim against them under Title VI. Accordingly, it is recommended that Plaintiff's claims under Title VI be dismissed.

### b.     Claim under La. R.S. 23:964

Plaintiff also asserts that Defendants violated Louisiana state law La. R.S. 23:964 which, per Plaintiff, is a state equivalent of Title VI.[19] As provided by La. R.S. 23:964:

> No employer shall discharge or in any other manner discriminate against any employee because such employee has testified or furnished any other information in any investigation or proceeding relative to the enforcement of any of the labor laws of this state.

La. R.S. 23:964(A). Once again, Plaintiff provides no argument specific to Defendants' alleged violation of this statute. But more importantly, La. R.S. 23:964 does not provide a private right of action for any violations of its provisions. *Jones v. City of Monroe*, No. 19-832, 2019 WL 5488603, at *5 (W.D. La. Oct. 8, 2019), *report and recommendation adopted*, No. 19-832, 2019

---

[18] *See, e.g.*, R. Doc.22 at 4.
[19] R. Doc. 16 at 2.

WL 5491922 (W.D. La. Oct. 24, 2019). "Rather, it provides remedies in the nature of criminal and civil penalties, with the civil penalties to be enforced by the assistant secretary of the office of workforce development." *Id.* (citing La. R.S. 23:964). "Given that the Louisiana legislature is well aware of how to create a private cause of action when it is so inclined, the conspicuous absence of one in § 23:964 impels the conclusion that the legislature did not intend one in this instance." *Id.* (citing *Monier v. St. Charles Par. Sch. Bd.*, 65 So.3d 731, 735 (La. App. 5th Cir. 2011)). Thus, as a private citizen, Plaintiff cannot bring a claim for violation of La. R.S. 23:964, and this claim, too, should be dismissed.

### 3. Plaintiff's Claim of Discrimination in Violation of Title VII and Related State Law

#### a. Sex discrimination

The anti-discrimination provision of Title VII prohibits an employer from: (1) failing or refusing to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limiting, segregating, or classifying his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a).

"A plaintiff does not have to plead a *prima facie* case to state a plausible claim of discrimination in order to survive Rule 12(b)(6) motion." *Williams v. Genesis Energy, LLC*, No. 20-35, 2021 WL 1227873, at *6 (M.D. La. Mar. 31, 2021). "The requirements for a *prima facie* case, however, provide useful guideposts for determining whether a plaintiff has pled a plausible claim." *Id.* A plaintiff, though, is not exempt from her obligation "to 'allege facts sufficient to

state all the elements of her claim.'" *Id.* (citing *Puente v. Ridge*, 324 F. App'x. 423, 427-28 (5th Cir. 2009); *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x. 363, 370 (5th Cir. 2008)). The elements of a *prima* facie case under Title VII are: (1) plaintiff is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) she was replaced by someone outside the protected class or, in the case of disparate treatment, others similarly situated were treated more favorably. *Id.* (citing *Minnis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. College*, 55 F. Supp. 3d 864, 875 (M.D. La. 2014)). According to the Fifth Circuit, an "adverse employment action" consists of "'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (citations omitted). "An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Id.* (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (internal quotations omitted)).

Because these same requirements apply to Plaintiff's claims under La. R.S. 23:332, et seq., the state law equivalent of Title VII, as alleged by Plaintiff, "Louisiana state courts routinely look to federal jurisprudence, including Title VII, to interpret Louisiana's anti-discrimination laws." *Id.* (citing *Minnis*, 55 F.Supp.3d at 884-85). "Naturally, therefore, a plaintiff who fails to meet his or her burden under Title VII—or who succeeds in doing so—will simultaneously fail to satisfy— or concurrently demonstrate—the prerequisites set forth in Louisiana law." *Martin v. Winn-Dixie La., Inc.*, 132 F.Supp.3d 794, 811 (M.D. La. 2015). As such, the Court will analyze Plaintiff's federal and state discrimination claims together.

Here, Plaintiff alleges discrimination on the basis of her sex. As a female, Plaintiff is a member of a protected class. *See Anderson v. Mem'l Hermann Healthcare Sys.*, No. 16-1647,

2017 WL 10648377, at *2 (S.D. Tex. Oct. 5, 2017) ("[Plaintiff] is a female and this is a protected class for sex discrimination claims.").  Plaintiff alleges multiple acts of discrimination in her Amended Complaint.  One such claim involves denial of health insurance benefits to Plaintiff.  As alleged by Plaintiff, on October 30, 2018, during an interview before beginning her employment with Defendants, Defendants requested "she reduce her salary value by absorbing the cost of the group health insurance into her salary … because of the discussion of Plaintiff's age and sex and the related high cost of coverage."[20]  Upon being hired, Plaintiff was told that she would be eligible for health insurance, effective after 90 days.[21]  However, another younger male employee was subject only to a 30-day waiting period.[22]  In fact, despite working more than 90 days with Defendants, Plaintiff states that she never received health insurance from Defendants, despite requests for same by Plaintiff.[23]  "Denial of health insurance benefits to an employee constitutes an adverse employment action necessary to state a *prima facie* case of discrimination." *Sherman v. Dallas County Cmty. Coll. Dist.*, No. 08-2112, 2010 WL 2293165, at *5 (N.D. Tex. May 11, 2020) (citing *E.E.O.C. v. Dunbar Diagnostic Servs. Inc.*, 92 F. App'x. 83, 84 (5th Cir. 2004)).  Further, Title VII allows for mixed-motive analyses.  *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 310-11 (5th Cir.  2004).  The Court, therefore, finds that Plaintiff alleges sufficient facts to make a *prima facie* case of discrimination under Title VII and need not address Plaintiff's additional discrimination allegations.  It is recommended that Defendants' Motion to Dismiss with regard to this claim be denied.

---

[20] R. Doc. 16 at 13.  Per Plaintiff, she declined to absorb said cost.  *Id.*
[21] R. Doc. 16-1 at 10, 70.
[22] R. Doc. 16 at 13; R. Doc. 16-1 at 2, 70.
[23] R. Doc. 16 at 13.

### b.    Race discrimination

While Plaintiff has sufficiently alleged a claim of discrimination based on sex, she has not sufficiently alleged a claim of discrimination based on race.  In fact, Plaintiff does not even allege that she is a member of a particular protected class in her Amended Complaint, instead disclosing that she is "a minority" in her Opposition to Defendants' Motion to Dismiss, while asserting she is "White" on an "Inquiry Information" she submitted to the EEOC.[24]  Further, in describing the administrative procedures taken prior to filing suit, Plaintiff states that she filed charges of discrimination with the EEOC "alleging discrimination based on age, sex, harassment, and retaliation."[25]  However, the Court finds it worth noting that while Plaintiff claims race discrimination in her EEOC Charge dated June 13, 2019, she does not claim race discrimination in her June 19, 2019 EEOC Charge, raising the question of whether Plaintiff actually sustained a charge of race discrimination with the EEOC.[26]

As set forth above, any successful race discrimination claim under Title VII must show that Plaintiff herself suffered discrimination because of her race, color, or national origin.  *See* 42 U.S.C. § 2000e-2(a).  As previously discussed by this Court in Section II.B.2.a., Plaintiff has made no allegations to that effect.  Nowhere in her Amended Complaint does Plaintiff allege that adverse actions were taken against her because of her race.  Plaintiff does make some general allegations of disparate treatment of African-Americans, *e.g.*, stating in her Amended Complaint that she "prays that the Defendants stop the neutral employment policies and practices that inflicted a disproportionate negative impact on the Plaintiff, Blacks and any future older employee."[27]  However, this and similar statements fall far short of establishing the elements of a successful Title

---

[24] R. Doc. 22 at 4; R. Doc. 16-1 at 70..
[25] R. Doc. 16 at 12.
[26] R. Doc. 16-1 at 8, 60.
[27] R. Doc. 16 at 17.

VII race discrimination claim, as no specific adverse action is identified, and no allegation that any such adverse action, should one exist, was taken specifically because of Plaintiff's race. *See Williams*, 2021 WL 1227873, at *6. Any claim for race discrimination under Title VII potentially raised in Plaintiff's Amended Complaint, therefore, should be dismissed.

### 4. Plaintiff's Claim of Discrimination Under the ADEA and Related State Law Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Almost identically, the Louisiana Age Discrimination in Employment Act ("LADEA"), like the federal ADEA, also makes it unlawful for an employer to "[f]ail or refuse to hire, or to discharge, any individual or otherwise discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment because of the individual's age." La. R.S. 23:312(A)(1); *Montgomery v. C & C Self Enterprises, Inc.*, 2010-705 (La. App. 3 Cir. 3/30/11), 62 So.3d 279, 281, *writ denied*, 2011-0873 (La. 6/3/11), 63 So.3d 1016. "Because Louisiana's age discrimination statute is nearly identical to the federal statute prohibiting age discrimination, Louisiana courts have traditionally used federal case law for guidance." *Montgomery*, 62 So.3d at 281. The Court, therefore, will analyze Plaintiff's federal and state age discrimination claims together.

"Unlike Title VII, the ADEA does not authorize an alleged mixed-motives age discrimination claim. *Glick v. Greatwide Logistics Servs., LLC*, No. 12-246, 2013 WL 2355398, at *3 (N.D. Tex. May 29, 2013) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)). "Instead, a plaintiff bringing a disparate-treatment claim under the ADEA must prove that age was the 'but-for' cause of the challenged adverse

employment action." *Id.* (citing *Gross,* 557 U.S. at 167; *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).  As such, it is not sufficient for a plaintiff to show that age was a motivating factor; rather, "[b]ut-for cause means the cause without which the challenged adverse employment action would not have occurred." *Id.* (citing *Gross*, 557 U.S. at 175; *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n. 4 (5th Cir. 1996) (quotations omitted)).

In order to establish a *prima facie* case of discrimination under the ADEA, Plaintiff must show that (1) she was a member of the protected class, (2) she was qualified for the position at issue,[28] (3) she suffered an adverse employment decision, and (4) she was replaced by someone younger or treated less favorably than similarly situated younger employees.  *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013) (quoting *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003)).  "While a plaintiff need not plead a *prima facie* case of discrimination in her complaint, the *prima facie* elements are not entirely irrelevant, and no plaintiff is exempt from her obligation to allege sufficient facts to state all the elements of her claim." *Durham v. Ascension Parish Sch. Bd.*, No. 14-445, 2015 WL 3456646, at *3 (M.D. La. May 29, 2015) (citation omitted).  The protected class includes individuals who are at least forty years old, of which Plaintiff is a member.[29]  *Id.* at 411.

Here, Plaintiff's allegations regarding insurance benefits, discussed above, appear to be based on both Plaintiff's age and sex, raising the question of whether age could be considered the but-for cause of that adverse event.  However, in her Inquiry form submitted to the EEOC and attached to her Amended Complaint, Plaintiff alleges:

> -April 4, 5th 2019, Prisha Patel-HR Director and Operations Director, did nothing
> to assist me with my inquiry [about when she would receive her employee benefits],

---

[28] The Court notes that, based on the record, Plaintiff appears to have been qualified for her position, and nothing in any of the pleadings filed with the Court indicates otherwise.
[29] R. Doc. 16-1 at 8.  Plaintiff, in her June 19, 2019 EEOC Charge of Discrimination asserts that she was, at that time, 62 years old.

yet other younger Directors and other General Managers had received their benefits. (Other employees that had already received their employment benefits are Michael Nebergall-General Manager, 45 yrs, male, white, received his employment benefits. Manisha Patel, Director of Operations, 42 yrs old, female, Asian American received her benefits, Prisha Patel-Director of Operations and Human Resources, 38 yrs, female, Asian American, British had received her benefits. And other employees.[30]

These allegations, taken as true in the context of a motion to dismiss, demonstrate a dichotomy based solely on age, with Plaintiff alleging she was treated differently than younger employees. Because these allegations indicate that the failure to provide benefits may have been based on age alone, the Court finds that Plaintiff has sufficiently alleged a claim for discrimination under the ADEA, particularly at this stage of the litigation.[31] This is especially true in light of the Fifth Circuit's holding that a party "need not plead that age was the *sole* cause of their injury to survive a motion to dismiss." *Leal*, 731 F.3d at 415 (reversing district court's dismissal of plaintiff's age discrimination claim). To the extent Defendants' Motion to Dismiss seeks to dismiss Plaintiff's age discrimination claims under the ADEA, it should be denied.

### 5.    Plaintiff's Claim for Harassment

Plaintiff, in her Amended Complaint, also alleges that "Defendants and their employees were directed by Defendants and their agents to harass and create a hostile work environment for Plaintiff.[32] A claim for harassment or a hostile work environment may be brought under Title VII and the ADEA based on age or sex discrimination. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 440-41 (5th Cir. 2011). To advance such a claim, Plaintiff must show: (1) she falls within a protected group under Title VII and/or the ADEA; (2) that she was subjected to harassment, either through words or actions, based on sex, race or age; (3) that harassment created an objectively

---

[30] R. Doc. 16-1 at 2.
[31] Because the Court discussed the elements of a *prima facie* case of discrimination in the previous section, the Court will not again do so here, instead incorporating by reference its prior analysis.
[32] R. Doc. 16 at 4.

intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Id.* at 441. The Court finds that Plaintiff has failed to meet her burden with regard to her harassment claim. While Plaintiff details certain events or instances she argues are harassing, and which do suggest animosity toward Plaintiff by Defendants, Plaintiff fails to demonstrate that any of the alleged harassing behavior was directed toward Plaintiff specifically because of her protected status, *i.e.*, because of her age, sex, or race. Indeed, Plaintiff herself attributes the alleged harassment to Defendants' displeasure with her allegations of unlawful business practices.[33] As such, Plaintiff fails to state a claim for harassment under either Title VII or the ADEA, and said claim should be dismissed. *See Sider*, 2018 WL 1844172, at *2 (stating "Title VII does not prohibit all verbal or physical harassment in the workplace" but is directed only at such based on a protected characteristic and dismissing plaintiff's hostile work environment claim because "complaint fails to articulate any connection between a protected class and defendant's alleged harassment").

### 6.    Plaintiff's Claim for Retaliation

In her Amended Complaint, Plaintiff also alleges claims of retaliation in violation of Title VII and the ADEA. To establish a *prima facie* retaliation claim, Plaintiff must show (1) that she engaged in an activity protected by Title VII or the ADEA, (2) that Defendants took an adverse employment action against her, and (3) that a causal connection exists between the protected activity and the adverse employment action. *Smith v. Home Depot U.S.A., Inc.*, 102 F.Supp.3d 867, 878 (E.D. La. 2015) (citing *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003)). A "protected activity" is any activity that opposes any practice rendered unlawful by Title VII or the ADEA, "including making a charge, testifying, assisting, or participating in any

---

[33] R. Doc. 16 at 6.

investigation, proceeding, or hearing." *Id.* (citing *Williams v. Recovery Sch. Dist.*, 859 F.Supp.2d 824-830-31 (E.D. La. 2012)).  "An adverse employment action is 'one that a reasonable employee would have found … [to be] materially adverse … [meaning] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Id.* (quoting *Puente v. Ridge*, 324 F. App'x. 423, 429 (5th Cir. 2009)).  "To make out the causation element, Plaintiff must also demonstrate that the protected activity was the but-for cause of the adverse employment action."  *Id.* (citing *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362, 133 S.Ct. 2517, 186 L.Ed. 2d 503 (2013)).

Under Title VII, "protected activity can consist of either: (1) 'opposing any practice made an unlawful employment practice by this subchapter' or (2) 'making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under this subchapter.'" *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a) (modifications removed)).  "The first of these is known as the 'opposition clause;' the second as the 'participation clause.'"  *Id.*  Similarly, under the ADEA , "[i]n determining whether an employee has engaged in an activity protected by the ADEA, it must be shown that he either opposed a practice prohibited by the ADEA or has participated 'in any manner' in a proceeding under the ADEA."  *Bruno v. RIH Acquisitions MS I, LLC*, 530 F.Supp.2d 819, 820-21 (N.D. Miss. 2008) (citing *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226 (5th Cir. 1996)).  Notably, "[a]n internal complaint to an employer does not qualify as protected activity under the 'participation clause.'" *Sider v. Jefferson Parish Hosp. Serv. Dist. No. 2*, No. 17-14527, 2018 WL 1844172, at * 2 (E.D. LA. Apr. 18, 2018) (citing *Cuellar v. Sw. Gen. Emergency Physicians, PLLC*, 656 F. App'x. 707, 709 (5th Cir. 2016); *Rite Way Servs.*, 819 F.3d at 239 n. 2).

Beginning first with participation, the only investigation, proceeding, or hearing in which Plaintiff has made a charge, testified, assisted, or participated in any other manner is the Charge of discrimination she made with the EEOC.  In a letter dated June 6, 2019, addressed to Louisiana Commission on Human Rights ("LCHR") employee Christa Davis, which Plaintiff has attached to her Amended Complaint, Plaintiff states that "[o]n May 2, 2019, [she] emailed Ravi Patel, Deepesh Rubin Patel, Manisha Patel and Prisha Patel and stated [she] had exhausted all avenues to get the discrimination and realizations to stop and put each on notice of [her] having filed a complaint with the EEOC."[34]  Plaintiff was then terminated on May 8, 2019, six (6) days later.[35]  "To show a causal nexus, a plaintiff must show only that the protected activity was among the factors motivating the adverse employment action, not that it was the sole motivating factor."  *Ware v. CLECO Power LLC*, 90 F. App'x. 705, 707 (5th Cir. 2004) (citing *Long v. Eastfield College,* 88 F.3d 300, 305 n. 4 (5th Cir.1996)).  Importantly, "[t]emporal proximity between the protected activity and the adverse employment action may be a significant factor in showing this causal link."  *Id.* (citing *Evans v. City of Houston,* 246 F.3d 344, 356 (5th Cir.2001); *Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.1997)).  Here, at this stage of the litigation and given the temporal proximity of the termination of Plaintiff's employment and her notifying Defendants she had filed a claim with the EEOC, the Court finds that Plaintiff has sufficiently alleged a claim of retaliation based on her participation in a protected activity.

Because Plaintiff has cleared this hurdle, the burden shifts to Defendants to show a legitimate, non-discriminatory rationale underlying the employment action.  *See id.* (citing *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001)).  Defendants, however, fail to provide any such

---

[34] R. Doc. 16-1 at 4.
[35] *Id.*

rationale in their Motion to Dismiss or their Reply in support thereof.  As such, the Court declines to dismiss Plaintiff's claim for retaliation under the "participation clause."

Turning to opposition, the Court is reminded that "the opposition clause does not require opposition alone; it requires opposition *of a practice made unlawful by Title VII*."  *Sider*, 2018 WL 1844172, at *2 (quoting *Rite Way Servs.*, 819 F.3d at 239) (emphasis in original)).  Here, Plaintiff alleges that on April 9, 2019, she called owner Deepeshkumar Rubin Patel ("D. R. Patel"), in part, "to inform him that not one single employment benefit, committed to [Plaintiff] in writing, had been provided [her]."[36]  As discussed above, Defendants' failure to provide health insurance benefits to Plaintiff because of her sex sufficiently alleges a *prima facie* case of unlawful discrimination under Title VII.  Plaintiff then claims that on April 19, 2019, Ravi Patel "retaliated" against her "by taking away two hotels that would mean a loss of income for the Plaintiff."[37]  *See Thompson, supra.*  Once again, the Court need look no further, finding that Plaintiff sufficiently has alleged a claim of retaliation under the "opposition clause" as well.  Because, as previously stated, Defendants do not provide a legitimate, non-discriminatory rationale underlying the employment action, Defendants' Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's retaliation claims, should be denied.

### 7.    Plaintiff's ADA and Related State Law Claim

#### a.    ADA claim

Additionally, Plaintiff alleges that Defendants' actions toward Plaintiff during her employment violated the ADA.  According to Plaintiff in her Amended Complaint, "Defendants deliberately and willfully ignored Plaintiff's current and past, physical limitations, injuries and

---

[36] R. Doc. 16-1 at 3 ; *see also* R. Doc. 16 at 9 ("Plaintiff went to Defendant Dr [sic] Patel for his help concerning internal operational issues and Plaintiff's benefits in her contract, specifically medical coverage.").

[37] R. Doc. 16 at 8.; R. Doc. 16-1 at 4 ("April 18th, 2019 Ravi Patel-Owner came in my office an [sic] announced that he would be taking away 2 hotels that produced income for me.").

unhealthily [sic] medical diagnoses under treatment" while also "frequently put[ting] Plaintiff in a position that forced her to perform extremely difficult physically operational assignments."[38]  To this end, Plaintiff claims that she made Human Resources Director Prisha Patel "aware of her extremely high blood pressure, that measured 180+" at Dr. Rubin Patel's medical practice.[39]  She also claims that she "was not given an office and had to carry all her heavy electronic equipment to and from the hotel every day."[40]  Further allegations include an incident occurring on April 29, 2019, during which Plaintiff "was forced to load, and unload 2200 pounds of luggage, both ways to and from the airport, all within a 45-minute period … in a 5-person family van."[41]  Per Plaintiff, her "disabilities should have been a concern and protected under ADA due to, but not limited to, her physiological condition, when she asked Defendants for help with the excessive luggage that night," which help purportedly was not provided.[42]  Plaintiff also complains that she was not allowed to continue attending physical therapy for an injured knee or to "put her leg up with ice packs."[43]  Plaintiff states that Defendants "were fully aware of Plaintiff's physical limitations from before she was hired" because she had informed them of two medical procedures—knee replacement and hernia operation—she recently had had.[44]

Defendants, in their Motion to Dismiss, argue that Plaintiff's claim pursuant to the ADA must be dismissed because Plaintiff failed to first exhaust her administrative remedies before bringing this claim.  Per Defendants, "[n]othing in [Plaintiff's] EEOC charge mentions a disability

---

[38] R. Doc. 16 at 8.
[39] R. Doc. 16 at 8.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.* at 9.
[44] *Id.* at 13.

or the ADA."[45]  Defendants further assert that "[t]he box labeled 'disability' is not checked, and the narrative of the charge fails to include any facts regarding a disability or an ADA claim."[46]

The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA also protects individuals from retaliation for opposing any act that is illegal under the ADA or for participating in any investigation, proceeding or hearing under the ADA. 42 U.S.C. § 12203.  However, "[b]efore a plaintiff may file her ADA claim in federal court, she must exhaust her administrative remedies."  *Patton v. Jacobs Engineering Group, Inc.*, 874 F.3d 437, 443 (5th Cir. 2017); *Franklin v. City of Slidell*, 936 F.Supp.2d 691, 709 (E.D. La. 2013) ("A plaintiff asserting a claim against his employer under the ADA must exhaust his administrative remedies before filing suit against his employer in federal court.").  Further, the scope of a court's inquiry in an ADA action "should be limited to 'the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Franklin*, 936 F.Supp.2d at 709 (quoting *Young v. City of Houston*, 906 F.2d 177, 179 n. 1 (5th Cir. 1990)).  Stated another way, "[t]o satisfy exhaustion, a claim generally must arise out of the plaintiff's EEOC charge."  *Ernst v. Methodist Hosp. Sys.* 1 F.4th 333, 337 (5th Cir. 2021) (citing *Filer v. Donley*, 690 F.3d 643, 47 (5th Cir. 2012)).  "That requirement relates to a key purpose of an employment-discrimination charge, which is to give the employer notice of the existence and general substance of the discrimination allegations."  *Id.* (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003)).

---

[45] R. Doc. 21-1 at 5.

[46] *Id.*

Plaintiff here filed two (2) charges of discrimination with the EEOC. The first is dated June 13, 2019, and brings claims for discrimination based on race, sex, age, and retaliation ("EEOC Charge A").[47] In the section where Plaintiff provides "the particulars" of her claim, Plaintiff makes no reference to a disability, the ADA, or anything relating to the two. Further confirming this, Plaintiff specifically states, "I believe I was discriminated against based on age, 62, sex, Female, and Retaliation, in violation of LSA R.S. 23:301 et. eq. [sic] and Title VII of the Civil Rights Act of 1964, and the Age Discrimination In Employment Act, as amended respectively."[48] The second charge of discrimination Plaintiff filed with the EEOC is dated June 19, 2019, and brings claims for discrimination only based on sex, age, and retaliation ("EEOC Charge B").[49] In "the particulars" section of this Charge, Plaintiff once again fails to make any reference to a disability or the ADA. Plaintiff also makes the same statement regarding the perceived bases for discrimination she allegedly suffered, as set forth above.[50] Thus, as argued by Defendants, Plaintiff fails to allege a violation under the ADA in either of her EEOC Charge Forms.

However, attached to Plaintiff's EEOC Charge A are a letter dated June 6, 2019, regarding "Kimborughly Ann Foster-Discrimination and Retaliation Charges Filed" as well as an EEOC "Inquiry Information" form, both of which provide additional information about Plaintiff's allegations.[51] In certain circumstances, courts have considered other documents as part of a formal EEOC charge. *See, e.g., Federal Express Corp. v. Holowecki*, 552 U.S. 389, 405-07, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) (finding sufficiently detailed and verified intake questionnaire constituted a charge under the ADEA); *Patton*, 874 F.3d at 443 (finding that plaintiff's "intake

---

[47] R. Doc. 16-1 at 60.
[48] *Id.* at 61.
[49] *Id.* at 8.
[50] *Id.* at 8.
[51] *Id.* at 64-67, 68-75.

questionnaire should be construed as part of the EEOC charge" because it was filed "together with his formal charge of discrimination" and the EEOC investigation "clearly encompassed" the claim at issue).

Such is not always the case, though. In *Ernst v. Methodist Hospital System*, the plaintiff alleged only race discrimination in his EEOC charge form but included additional allegations of sex discrimination and retaliation in his EEOC intake questionnaire. 1 F.4th 333, 338 (5th Cir. 2021). The Fifth Circuit found that, because the questionnaire was not verified and because plaintiff's employer did not receive notice of the additional allegations during the EEOC investigation, plaintiff had failed to exhaust his administrative remedies. *Id.* at 339. The court in *McLeod v. Floor & Decor Outlets of America, Inc.*, No. 20-3134, 2021 WL 2515750 (N.D. Tex. June 18, 2021), reached a similar conclusion. In *McLeod*, the plaintiff filled out an online inquiry information form with the EEOC, which form was not sworn to or supported by plaintiff's unsworn declaration, more than three (3) weeks before filing a formal EEOC Charge of Discrimination form. *Id.* at *2. While the inquiry form mentioned retaliation, in addition to sex discrimination, the EEOC Charge included only an allegation of sex discrimination. *Id.* Per the court, "[t]he box for retaliation [wa]s unchecked and no mention [wa]s made of retaliation." *Id.* Following the Fifth Circuit's ruling in *Ernst*, the *McLeod* court concluded "that McLeod's unverified inquiry information form does not qualify as a charge and thus McLeod has failed to exhaust her administrative remedies regarding her Title VII retaliation claim." *Id.*

The Court finds these cases persuasive. Here, Plaintiff has attached an EEOC "Inquiry Information Form," which has not been signed or otherwise verified by Plaintiff.[52] Additionally, in that Inquiry Form, Plaintiff specifically states, "I do not have a disability."[53] In addition, with

---

[52] R. Doc. 16-1 at 68-75.
[53] *Id.* at 70.

her June 13, 2019 EEOC Charge, Plaintiff provides a typed letter, possibly an e-mail, dated June 6, 2019, and addressed to Christa Davis with the LCHR.[54]  The subject of the letter is "Kimborughly Ann Foster-Discrimination and Retaliation Charges Filed," and it provides a timeline of events related to Plaintiff's employment with Defendants.[55]  However, this letter, like the Inquiry Form, is not verified by Plaintiff.  Further, it is addressed to an employee of the LCHR, not the EEOC, so it is unclear whether it was sent to the EEOC or otherwise included in the EEOC's investigation.  As such, neither the Inquiry Form nor the letter can be considered as part of Plaintiff's formal EEOC Charge.  The Court, therefore, finds that Plaintiff failed to raise a claim under the ADA with the EEOC, thereby failing to exhaust her administrative remedies.  Accordingly, this claim should be dismissed without prejudice.  *See Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467, n. 5 (5th Cir. 2004) ("When a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies.").

### b.    Claim under La. R.S. 23:322, et seq.

In her Amended Complaint, Plaintiff also asserts a violation of the ADA equivalent in Louisiana law, La. R.S. 23:322, et seq.  The Court notes that, while Plaintiff lists this statute among the statutes allegedly violated by Defendants, she does not provide any argument specific to Defendants' alleged violation of La. R.S. 23:322.  Defendants, in response, argue that any claim Plaintiff may have had under La. R.S. 23:322 was not timely filed.  Defendants are correct.

"The prescriptive period for claims brought under Louisiana Revised Statute § 23:322 is one year."  *Bellow v. Board of Supervisors of La. State Univ. & Agric. & Mech. College*, 913 F.

---

[54] R. Doc. 16-1 at 64-67.
[55] *Id.* at 64.

Supp. 2d 279, 289 (E.D. La. 2012) (citing La. R.S. 23:303(D)).  Prescription under the statute "begins to run on the date that the discrimination occurs." *Nabors v. Metro. Life Ins. Co.*, No. 12-827, 2012 WL 2457694, at *3 (W.D. La. May 30, 2012).  Here, as set forth above, Plaintiff's employment was terminated on May 8, 2019.[56]  Thus, any discrimination potentially suffered by Plaintiff must have occurred on or before May 8, 2020.  Plaintiff filed this suit in State Court on May 20, 2020, more than one year after termination of her employment.[57]  Thus, on its face, this claim appears prescribed.

However, as a result of the ongoing pandemic, La. R.S. 9:5829 was enacted, which provides, in pertinent part:

> All prescriptions, including liberative, acquisitive, and the prescription of nonuse, abandonment periods, and all peremptive periods shall be subject to a limited suspension or extension during the time period of March 17, 2020, through July 5, 2020; however, the suspension or extension of these periods shall be limited and shall apply only if these periods would have otherwise expired during the time period of March 17, 2020, through July 5, 2020.  The right to file a pleading or motion to enforce any right, claim, or action which would have expired during the time period of March 17, 2020, through July 5, 2020, shall expire on July 6, 2020.

La. R.S. 9:5829(A).  Because Plaintiff's prescription date of May 8, 2020, falls within this period, Plaintiff had until July 6, 2020, to file suit, which deadline she met.

Timeliness, however, remains as issue, as Plaintiff's initial Complaint does not bring a claim under the ADA or otherwise allege discrimination on the basis of disability.[58]  Rather, Plaintiff first pleads violations of the ADA and equivalent state law in her Amended Complaint filed on October 16, 2020.[59]  The question, then, is whether this new ADA claim relates back to

---

[56] R. Doc. 16-1 at 8, 60.

[57] According to the date/time stamp by the East Baton Rouge Clerk of Court, Plaintiff filed her Petition in the 19th Judicial District Court on May 20, 2020.  R. Doc. 1-4 at 3.  However, in their Motion to Dismiss, Defendants assert: "Plaintiff's original Petition was filed in the 19th Judicial District Court for the State of Louisiana through e-filing received May 19, 2020."  R. Doc. 21-1 at 8.  Regardless of whether Plaintiff filed suit on May 19, 2020, or May 20, 2020, both dates fall more than one year after termination of her employment.

[58] R. Doc. 1-4 at 3-10.

[59] *See* R. Doc. 16.

Plaintiff's initial Complaint, such that it can be considered timely. The answer to that question is no.

In *Combs v. Exxon Mobil Corp.*, No. 18-45, 2019 WL 3502908, at **1-2 (M.D. La. Aug. 1, 2019), this Court was presented with a similar situation. In *Combs*, plaintiff filed her initial complaint within the 90-day time period allowed after receiving her right to sue letter. *Id.* at *1. Plaintiff subsequently filed an amended complaint one month later, outside of the 90-day period, in which, for the first time, she raised claims under the ADEA and Title VII. *Id.* This Court recognized that "[a]n amended complaint relates back to the original if 'the amendment asserts a claim that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading.'" *Id.* at *2 (quoting Fed. R. Civ. Proc. 15(c)). This Court further noted that, per the Fifth Circuit, "relation back is not permitted when the amendment attempts to add a new legal theory unsupported by factual claims raised in the original complaint." *Id.* (citing *McGregor v. La.*, 3 F.3d 850, 864 (5th Cir. 2019)). As such, the Court concluded that because the plaintiff did not allege race, sex, or age discrimination in her initial Complaint, new legal claims based on those allegations cannot relate back to the original complaint and were dismissed. *Id.*

Here, Plaintiff's right to sue letter is dated February 19, 2020. While Plaintiff's initial Complaint, filed May 20, 2020, was filed within, but at the end of, the 90-day period allotted, Plaintiff's Amended Complaint, filed over three months after expiration of the deadline extended by La. R. S. 9:5829, is not timely. Further, as in *Combs*, Plaintiff failed to make any claims of disability discrimination in her initial Complaint, instead raising them for the first time in her Amended Complaint. As such, her newly-raised claims of disability discrimination do not relate back to her initial Complaint as they are new legal claims and are, therefore, time-barred and should be dismissed.

### 8.    Plaintiff's Claim Under the Louisiana Whistleblower Statute

In her Amended Complaint, Plaintiff lists among the violations alleged therein: "Louisiana State Legislature adopted statutory protection for certain activities under the Whistleblower Statue [sic]."[60]  The Louisiana Whistleblower Statute, La. R.S. 23:967, "provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices." *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So.2d 1210, 1214, *writ denied* 2005-0103 (La. 3/24/05), 896 So. 2d 1036.   To make a claim for reprisal, a plaintiff must show: (1) the employer violated Louisiana law through a prohibited workplace practice; (2) the plaintiff advised the employer of the violation; (3) the plaintiff disclosed, threatened to disclose, or objected to the prohibited practice; and (4) the plaintiff suffered an adverse employment action as a result of her response to the prohibited practice.  *Broussard v. Bd. of Supervisors of La. State Univ. and A&M Coll.*, No. 19-527, 2021 WL 2878268, at *9 (M.D. La. July 8, 2021).   In addition, the employee must prove that the employer committed an actual violation of Louisiana law; specifically, the violation of law in question must be that of a state statute.  *Id.* (citing *Hale*, 886 So. 2d at 1216)); *see also Encalarde v. New Orleans Ctr. For Creative Arts/Riverfront*, 2014-2430 (La. 2/13/15), 158 So.3d 826, 826 ("In order to bring an action under 23:967, the employee must establish the employer engaged in workplace conduct constituting an actual violation of state law."); *accord Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 187 (5th Cir. 2018).

For her claim for violation of the Whistleblower statute to survive, Plaintiff must plead a specific violation of state law by Defendants.  *See Williams*, 2021 WL 1227873, at *9 (dismissing Whistleblower claim because plaintiffs "failed to plead any specific violation of state law in their complaint").   Here, Plaintiff fails to specify any law that Defendants allegedly violated.   For

---

[60] R. Doc. 16 at 2.

example, in her Amended Complaint, she alleges that "Plaintiff communicated to Defendant Ela Patel that she was violating Federal wage and labor laws and Louisiana wage and labor laws on paying time and a half for time worked over 40 hours in a 7-day period."[61]    Similarly, in her Opposition to Defendants' Motion to Dismiss, she claims that "Defendants were informed by the Plaintiff, in good faith, of several different laws which they were violating" without identifying either the title or number of the statute, or even the type of statute, she claims Defendants violated.[62]  Because Plaintiff has failed to plead a specific violation of state law by Defendants, or even identify a specific state law potentially implicated, Plaintiff's claim under the Louisiana Whistleblower Statute is not sustainable and should be dismissed.  *See Genella v. Renaissance Media*, 115 F. App'x. 650, 652(5th Cir. 2004) (finding that plaintiff failed to indicate which state law was violated in pleading only that plaintiff "reported one of his supervisors for using a company credit card to repair his private vehicle, which use violated company policy as well as state law"); *Gaspard v. Bechtel Corp. Inc.*, No. 16-1431, 2017 WL 924188, at **2-3 (W.D. La. Mar. 6, 2017) (noting that "[o]ur Fifth Circuit Court of Appeals has found that a plaintiff must point to a specific provision of state law which the employer violated" and granting Rule 12(b)(6) motion to dismiss plaintiff's claim under the Louisiana Whistleblower statute because, although he identified, generally, the state statutes he alleged were violated, including La. R.S. 23:13 and 23:14, the Court found this insufficient); *Williams v. Hosp. Serv. Dist. of West Feliciana Parish, La.*, No. 15-95, 2015 WL 4656910, at **3-4 (M.D. La. Aug. 5, 2015) (finding that plaintiff "must indicate in the complaint which state law, if any, the defendant violated" and denying motion to dismiss claim under the Louisiana Whistleblower Statute because plaintiff identified the specific state laws allegedly violated).

---

[61] R. Doc. 16 at 6.
[62] R. Doc. 22 at 3-4.

While Plaintiff's failure to specify a state law Defendants allegedly violation is sufficient for dismissal of Plaintiff's claim under the Louisiana Whistleblower Statute, Plaintiff's claim also is untimely. Although there is no prescriptive period specifically set out in the Louisiana Whistleblower Statute, "Louisiana courts uniformly apply a one-year prescriptive period to claims under LA. R.S. 23:967." *Price v. PCS Nitrogen Fertilizer, L.P.*, No. 03-153, 2010 WL 1005181, at *3 (M.D. La. Mar. 15, 2010); *see also Nolan v. Jefferson Parish Hosp. Service Dist. No. 2,* 2001–175 (La.App. 5th Cir.6/27/01), 790 So.2d 725 (employee's wrongful termination claim under La. R.S. 23:967 was governed by the general one-year prescriptive period for delictual actions). Prescription begins to run from the day the injury or damage is alleged to have been sustained. *Clark v. Auger Servs., Inc.*, 443 F.Supp.3d 685, 712 (M.D. La., Mar. 10, 2020) (citing La. C.C. art. 3492; *Nolan*, 790 So.2d at 733; *Langley v. Pinkerton's Inc.*, 220 F.Supp.2d 575, 581 (M.D. La. 2002)). Most importantly here, "[p]rescription for retaliation claims under La. R.S. 23:967 is not suspended during administrative review or investigation." *Id.*; *see also Langley*, 220 F.Supp.2d at 581 ("the court has found nothing to indicate that the Whistleblower Statute is suspended during and administrative review or investigation"); *Hunter v. Jefferson Parish Public School System*, No. 17-2015, 2017 WL 2910992, *7 (E.D. La. July 7, 2017) ("It is well established that filing a charge with the EEOC does <u>not</u> suspend the running of prescription for claims asserted under Section 23:967").

The Court here applies the same analysis set forth above with regard to the timeliness of Plaintiff's ADA claim. As with the disability claim, Plaintiff's initial Complaint does not bring a claim under the Louisiana Whistleblower Statute. Plaintiff first pleads violations of the Louisiana Whistleblower Statute in her October 16, 2020 Amended Complaint.[63] Once again, the Court finds

---

[63] *See* R. Doc. 16.

no relation back.  As such, Plaintiff's Amended Complaint, filed over three months after expiration

of the deadline extended by La. R. S. 9:5829, as discussed in detail above, is not timely.  For these

reasons, Plaintiff's claim under the Louisiana Whistleblower Statute should be dismissed.

**9.     Plaintiff's Remaining Claims**

Finally, Plaintiff alludes to certain other claims or issues in her Amended Complaint that

the Court, out of an abundance of caution, addresses, in turn, below.

**a.     Affordable Care Act**

In her Amended Complaint, Plaintiff lists the violations she alleges were committed by

Defendants, all of which are addressed above.  While not included in the list of violations, Plaintiff

references the Affordable Care Act ("ACA"), stating:

> Affordable Care Act Implementation (Part XIV) Section 18B of the Fair Labor
> Standards Act (FLSA), as added by section 1512 of the Affordable Care Act,
> generally provides that, in accordance with regulations promulgated by the
> Secretary of Labor, employers must provide each employee notice of coverage
> options available through a Health Insurance Market Place (also referred to as an
> Exchange) Department of Labor issued Technical Release2013-02 [sic] provided
> temporary guidance on FLSA section 1-B, as well as a model notice.  In the
> Technical Release, model notice for employers who offer a health plan to some or
> all employees, and model notice for employers who do not offer Health Plan.
> (Http://www.dol.gov/ebse/healthform/)[64]

However, Plaintiff never again references the ACA or explains how Defendants violated same.

The Court acknowledges that Plaintiff does complain about not receiving health insurance benefits

equal to those offered to her colleague but interprets that complaint as one of discrimination, as

discussed above.  Further, the section of the ACA cited pertains to an employer providing notice

of coverage options to an employee, which is not an issue raised by Plaintiff in her Amended

Complaint.  As such, the Court finds that, if indeed Plaintiff intended to raise a claim for violation

of the ACA, Plaintiff fails to meet the Rule 8 standard of providing "a short and plain statement of

---

[64] R. Doc. 16 at 5-6.

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  As such, this claim should be dismissed.

### b.    Claims brought on behalf of others

Finally, while unclear, it appears that Plaintiff may be attempting to make claims on behalf of other employees of Defendants in her Amended Complaint.  In the list of violations allegedly committed by Defendants, with regard to Title VII, Plaintiff also states, "[t]he Civil Rights of many Minority employees were violated when their payroll wages were withheld."[65]  This allegation is insufficient to support a claim on behalf of any other person.

First, Plaintiff is the only listed prosecuting party.  There is no filing or other document that indicates that any of these referenced employees have joined this litigation or are in any way participating in this suit.  Thus, they are not parties, and Plaintiff cannot seek to herself recover damages allegedly suffered not by her, but by other individuals.

Second, to the extent Plaintiff may be seeking to serve as a legal representative for the employees, this, too, is untenable.  According to 28 U.S.C. § 1654, "in all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  "Courts have uniformly interpreted this statute to mean that a person who has not been admitted to the practice of law may not represent anybody other than himself in federal court."  *Walters v. BG Foods, Inc.*, No. 14-96, 2015 WL 1459953, at *4 (Mar. 30, 2015) (citations omitted).  "Although Section 1654 gives litigant the rights to bring claims *pro se*, it does not provide a layperson the right to represent someone else *pro se*."  *Id.*  Given Plaintiff's *pro se* status, she may not represent others in this

---

[65] R. Doc. 16 at 2.

litigation.  As such, any claims possibly brought by Plaintiff on behalf of other employees of Defendants should be dismissed.

### C.    Leave to Amend

The Court recognizes that courts are encouraged to grant leave to amend the complaint once to cure such deficiencies before dismissing a lawsuit or a claim with prejudice. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) ("Although a court may dismiss [a deficient] claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."). Here, however, Plaintiff has already been afforded such an opportunity, having filed her Amended Complaint following the filing of Defendants' initial Motion to Dismiss.  Moreover, Plaintiff has not requested leave to once again amend her Complaint in the event any of her claims are dismissed.  As such, the Court recommends that Plaintiff not be given an additional opportunity to further amend her Complaint.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendants' Motion to Dismiss (R. Doc. 21) be **GRANTED IN PART** and **DENIED IN PART**.  To the extent Defendants' Motion to Dismiss seeks to dismiss Plaintiff's claims of sex discrimination under Title VII, age discrimination under the ADEA, and retaliation, **IT IS RECOMMENDED** Plaintiff's Motion to Dismiss be **DENIED**.

**IT IS FURTHER RECOMMENDED** that with regard to all other claims, Defendants' Motion to Dismiss be **GRANTED** and Plaintiff's claims be **DISMISSED WITH PREJUDICE,** with the exception of Plaintiff's claims under the Americans with Disabilities Act, which should be **DISMISSED WITHOUT PREJUDICE**.

Signed in Baton Rouge, Louisiana, on September 14, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**